Matter of Dorsey (NY Go Express Inc.--Commissioner of Labor) (2021 NY Slip Op 04398)





Matter of Dorsey (NY Go Express Inc.--Commissioner of Labor)


2021 NY Slip Op 04398


Decided on July 15, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:July 15, 2021

531180
[*1]In the Matter of the Claim of Roshonda Dorsey, Respondent. NY Go Express Inc., Appellant. Commissioner of Labor, Respondent.

Calendar Date:June 2, 2021

Before:Lynch, J.P., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Peter Fidopiastis, Queensbury, for appellant.
Cooper, Erving & Savage, LLP, Albany (Carolyn B. George of counsel), for Roshonda Dorsey, respondent.
Letitia James, Attorney General, New York City (Gary Leibowitz of counsel), for Commissioner of Labor, respondent.



Aarons, J.
Appeal from a decision of the Unemployment Insurance Appeal Board, filed August 19, 2019, which ruled, among other things, that NY GO Express Inc. was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
NY GO Express Inc. (hereinafter Express) is a logistics broker in the transportation industry that makes arrangements with couriers to provide delivery services to its clients. Express retained Subcontracting Concepts LLC (hereinafter SCI) to act as a third-party administrator for the purpose of screening the couriers, handling payroll and dealing with other personnel matters. In March 2016, claimant visited Express' base of operations and inquired about becoming a courier. The dispatcher gave claimant documentation that she needed to complete and provide to SCI. After she provided the requested information and proof of a valid driver's license, current registration and insurance, she signed an owner/operator agreement with SCI that made her eligible to perform delivery services on behalf of Express. She then entered into a written service agreement with Express and began making deliveries both on demand and by a dedicated route. Most of the deliveries that claimant performed were by a dedicated route that was established in connection with a contract that Express had with the City of New York.
After claimant stopped making these deliveries, she filed a claim for unemployment insurance benefits. This prompted an inquiry by the Department of Labor into claimant's employment status. Thereafter, the Department issued initial determinations finding that claimant was eligible to receive benefits and that Express was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated. Express sought review of these determinations and, following a combined hearing, they were upheld by an Administrative Law Judge. These decisions were subsequently affirmed by the Unemployment Insurance Appeal Board. This appeal by Express ensued.
Initially, "[w]hether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor is determinative and the determination of the appeal board, if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary conclusion" (Matter of Concourse Ophthalmology Assoc. [Roberts], 60 NY2d 734, 736 [1983]; see Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010]). "[T]he relevant inquiry is whether the purported employer exercised control over the results produced or the means used to achieve those results, with control over the latter being the more important factor" (Matter of Escoffery [Park W. Exec. Servs. Inc.-Commissioner of Labor], 180 AD3d 1294, 1295 [2020]; see Matter of [*2]Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d at 437). Significantly, "[a]ll aspects of the arrangement must be examined to determine whether the degree of control and direction reserved to the [purported] employer establishes an employment relationship" (Matter of Cowan [Bimbo Foods Bakeries Distr. Inc.-Commissioner of Labor], 159 AD3d 1312, 1313-1314 [2018]; see Matter of Villa Maria Inst. of Music [Ross], 54 NY2d 691, 692 [1981]).
Here, after Express received a call from a client with a particular delivery need, it communicated with SCI through an online portal to find an available courier. Once SCI identified a courier, Express contacted the courier directly and explained the details of the delivery, including the proper etiquette to be followed in interacting with the client. The courier was free to accept or reject the delivery assignment. In claimant's case, most of the deliveries involved a dedicated route established through Express' contract with the City of New York and she checked in with Express' dispatcher each morning to indicate if she was accepting or rejecting the delivery assignment that day. This was necessary so that Express could provide reliable service to the client and find a different courier if necessary.
Claimant, like other couriers, was paid a percentage of the amount that Express received from the client. Express negotiated this fee, which ranged from between 45% and 65% as set forth in the service agreement. Under the service agreement, claimant, like other couriers, was able to earn additional income by wearing attire bearing Express' name, which claimant opted to do. In addition, claimant was required to maintain a written manifest tracking the daily deliveries that she made under Express' contract with the City of New York, which was necessary for billing purposes and was a requirement that was also typical with other clients. Claimant submitted these manifests to Express on a weekly basis. When a delivery was completed, a client would tender payment to Express, which would then forward it to SCI, who would pay the courier. The courier would receive payment regardless of whether the courier submitted a manifest or Express had received payment from the client. If a client was dissatisfied with a delivery, Express would respond to the complaint and contact SCI or the courier to have the problem rectified.
Although it was Express' clients who directed claimant's daily delivery activities, Express maintained a considerable amount of control insofar it was in regular contact regarding the acceptance of delivery assignments and the submission of manifests. It also provided guidance on client etiquette and furnished optional attire making it appear that a courier was acting as Express' representative. In addition, it imposed strict requirements on the timeliness of deliveries, directly handled client complaints and was tasked with finding another courier if a courier refused [*3]a delivery assignment. In view of the foregoing, substantial evidence supports the Board's finding that Express exercised a sufficient indicia of control over claimant to be deemed her employer and liable for additional unemployment insurance contributions, notwithstanding evidence in the record supporting a different conclusion (see Matter of Murray [TN Couriers LLC-Commissioner of Labor], 187 AD3d 1270, 1272 [2020]; see also Matter of Ramlall [Medical Delivery Servs.-Commissioner of Labor], 182 AD3d 960, 961 [2020]). Contrary to Express' claim, the Board properly concluded that the employment relationship extended to other similarly situated couriers for whom Express was also assessed additional contributions (see Labor Law § 620 [1] [b]; Matter of Murray [TN Couriers LLC-Commissioner of Labor], 187 AD3d at 1272; Matter of Mitchum [Medifleet, Inc.-Commissioner of Labor], 133 AD3d 1156, 1157-1158 [2015]). Accordingly, we find no reason to disturb the Board's decision.
Lynch, J.P., Clark, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the decision is affirmed, without costs.